HOME BENEFICIAL ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19589.  Promulgated April 10, 1929.

*Wyndham R. Meredith, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the respondent.

1320

OPINION.

Lansdon: Three questions are presented for determination in this proceeding: (1) The allowable deduction on account of net additions to reserves during the taxable year; (2) whether reserves held during the taxable year should be included in invested capital; and (3) whether there exists such abnormality of income or invested capital as will entitle petitioner to special assessment.

The respondent has allowed the full reserves claimed by petitioner for its life and endowment contracts. The petitioner makes no objection as to the reserves allowed by respondent for the sick element of the life, sick benefit and accident contracts, and concedes that the reserve computed by the respondent at December 31, 1920, on the life element of the life, sick benefit and accident policies is correct. We are concerned, then, only with the reserve at December 31, 1919, on the life element of the life, sick benefit and accident insurance.

Section 234 (a) (11) of the Revenue Act of 1918 provides:

(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*    \*    \*    \*    \*    \*    \*

(11) In the case of corporations issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan continuing for life and not subject to cancellation, in addition to the above, such portion of the net addition (not required by law) made within the taxable year to reserve funds as the Commissioner finds to be required for the protection of the holders of such policies only.

The petitioner made no additions to the reserve herein involved from 1914 to 1920. On its income-tax return for 1920 it claimed a net addition of $155,919.17. Upon audit the respondent calculated the proper increase in the reserve for the 6-year period and allowed one-sixth of that amount as a net addition during the taxable year.

It is the petitioner's contention that the increase would be less than the arbitrary amount determined by the respondent in the earlier years and greater in the later years. It offers in support of this contention a revaluation made in 1926 and submitted for the approval of the Insurance Bureau of the State of Virginia. Ray P. James, Actuary for the Virginia Insurance Bureau, was called as a witness for the petitioner and identified the letter set out in our findings of fact. He testified that on the figures submitted to him, the reserves stated in the letter were correct. On cross-examination

he admitted that he had not seen the petitioner's books, and that the figures submitted for insurance in force at December 31, 1919, were stated to be estimates. Such evidence can be given little weight to establish the correct reserve at that date in the absence of proof showing the amount of insurance then in force. The figures submitted for insurance in force at December 31, 1920, were taken from the petitioner's books and establish as the correct reserve on that date the amount determined by the respondent.

Petitioner must establish that the net additions in the taxable year are required for the protection of policyholders. *Mammoth Life & Accident Insurance Co.*, 6 B. T. A. 869. Proof of this fact necessarily includes the actual amounts of insurance outstanding at the beginning and end of the taxable year, which is the basis for additions to reserves.

We think the petitioner has failed to establish that the deduction claimed on account of net additions to reserves required for the protection of policyholders under section 234(a)(11) of the Revenue Act of 1918 is properly allocable to the taxable year.

Petitioner alleges that under the decision of the Supreme Court in *Duffy* v. *Mutual Benefit Life Insurance Co.*, 272 U. S. 613, it is entitled to have included in its invested capital the amount of reserves held during the taxable year. We do not agree with petitioner. In the *Duffy* case, *supra*, the court held that the legal reserve of a mutual life insurance company, consisting of premiums paid by the members, constitutes invested capital within the meaning of section 207 of the Revenue Act of 1917. The decision in that case rests upon the fact that each policyholder is a member of the corporation, and that the corporation has no capital stock. The petitioner in the instant proceeding is a stock company whose policyholders are not members of the corporation. In such circumstances, the petitioner's reserves do not come within the definition of invested capital as stated in section 326 of the Revenue Act of 1918.

In support of its claim for special assessment the petitioner urges the following grounds: (1) That special assessment was granted for the years 1918 and 1919; (2) that the respondent has allowed invested capital in the amount of $365,520.21, and determined net income to have been $299,062.10, which is an impossible yield of 82 per cent; (3) that, if petitioner is required to pay the deficiency determined, the total tax paid to the Government would amount to $138,149.15, which is 46.2 per cent of its net income as determined by the respondent; (4) that had it been permitted it would have shown gross disproportion between the tax determined and that paid by representative corporations; and (5) that, due to unfavorable living conditions and the hazardous nature of the work of petitioner's policyholders, most of whom were colored, the mortality rate was

approximately 200 per cent of the rate shown by the American Experience Table of Mortality, upon which petitioner's reserves are based.

Before the benefits of section 328 of the Revenue Act of 1918 can be granted, it must be shown that there were abnormal conditions affecting capital or income as provided in section 327 of the 1918 Act, which follows:

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, * * *

The Board has repeatedly held that the granting of special assessment for one year does not of itself warrant the granting of special assessment for a succeeding year. Granting relief in 1918 and 1919 is not proof that error was committed in denying relief for 1920. *Enameled Metals Co.*, 14 B. T. A. 1392; *Standard Rice Co., Inc.*, 13 B. T. A. 338.

The second, third, and fourth grounds urged by petitioner in support of its claim for special assessment are not directed to any abnormal conditions affecting capital or income. That the percentage of net income to invested capital is high or that the tax determined is large are not matters to be considered in a proceeding limited to the issues set out in subdivisions (a) and (b) of Rule 62. The fact of gross disproportion between the tax determined and that paid by representative corporations becomes material only in proceedings under section 328.

The petitioner's fifth ground, stated above, constitutes in our opinion an abnormality of income. Section 4256 of the Virginia Code of 1919 provides that all life insurance companies operating in the State shall maintain a reserve based upon the American Experience Table of Mortality, with 4 per cent interest. Pursuant to that statute petitioner set up its reserves, though its experience establishes a mortality rate 100 per cent in excess of that shown by the American Experience Table of Mortality, which is based on select white risks, while petitioner's risks consist of colored industrial workers.

Petitioner's actuary, A. B. Upshur, testified that at some time subsequent to the taxable year, he calculated the reserve on the life element of the life, sick benefit and accident policies as of the beginning and end of the taxable year on the basis of the Sub-standard

Industrial Table of Mortality and that the reserves thus computed were \$366,198 and \$446,238, an increase of \$80,040.

The reserves set up and held by petitioner during the taxable year being insufficient to meet its mortality losses, it follows that a part of the net income determined by the respondent will be required later for the payment of death claims. We are of the opinion, therefore, that petitioner's situation falls within the provisions of section 327 of the Revenue Act of 1918 and that its tax liability for the year 1920 should be computed under section 328 of such Act.

Reviewed by the Board.

*Decision will be entered after proceeding under Rule 62(c).*